IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NET CONNECTION LLC and WEB ACCESS LLC,<br><br>   Plaintiffs,<br><br>   v.<br><br>COUNTY OF ALAMEDA,<br><br>   Defendant.   / | No. C 13-1467 SI<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND DENYING DEFENDANT'S MOTION TO DISMISS** |

Now before the Court are plaintiffs' motion for a temporary restraining order and defendant's motion to dismiss the complaint. As set forth in this order, the Court finds that plaintiffs have stated a claim, but they have not established that they are likely to succeed on the merits. Accordingly, the Court DENIES defendant's motion to dismiss the complaint and DENIES plaintiffs' motion for a temporary restraining order.

**BACKGROUND**

On April 2, 2013, plaintiffs Net Connection LLC and Web Access LLC filed this lawsuit against the County of Alameda, alleging that zoning abatement orders issued by the County against both businesses violate plaintiffs' constitutional rights to equal protection, procedural and substantive due process, and free speech. Plaintiffs obtained business licenses from the County to operate as "retail" establishments. Plaintiffs offer computer and Internet time rentals, copy/fax services, mailbox rentals, and sell products such as snacks, including chips, candy, coffee and soda. To promote their businesses,

plaintiffs offer a "no purchase necessary" promotional sweepstakes to their customers. When a customer purchases Internet time or makes a purchase, the customer is given entries into a sweepstakes. Customers may also request a "no purchase necessary" sweepstakes entry. When a customer receives sweepstakes entries, either by making a purchase or by requesting free entries, the customer has the option of either learning his/her sweepstakes results from the cashier, or taking a swipe card to one of the computer terminals and logging on to learn the results of a sweepstakes entry. When the customer logs on to the computer, he or she is a given a choice to browse the Internet or play a sweepstakes game and learn the results of his or her sweepstakes entries. If a customer chooses to play a sweepstakes game on the computer, the time spent engaged in sweepstakes playing is not deducted from the customer's purchased Internet time.

Net Connection opened for business on January 2, 2012, and Web Access opened for business in May 2012. Beginning in June 2012, the Alameda County Planning Department Code Enforcement staff and the Alameda County Sheriff's Office received complaints about several businesses operating in unincorporated Alameda County, including Net Connection and Web Access. The County has submitted the declaration of Tona Henninger, Assistant Deputy Director of the Alameda County Planning Department, and the declaration of Bret Scheuller, a Sergeant with the Alameda County Sheriff's Office. Henninger oversees the Code Enforcement Division of the Planning Department, and Sergeant Scheuller worked with Code Enforcement staff to respond to complaints and to investigate possible zoning violations at Net Connection and Web Access. Henninger Decl. ¶ 1; Scheuller Decl. ¶¶ 4-5. "The specific complaints related to the late night hours, late-night loitering, and the increase in parking demand. These complaints also asked questions about the nature of the businesses, as they appeared to be offering gaming activities similar to casino-style slot machines." Henninger Decl. ¶ 4. These complaints came from both individual citizens as well as neighboring businesses. *Id*.

The Code Enforcement staff began an investigation, which included visits to the business locations. Henninger states that she made site visits to Net Connection and Web Access on at least eleven occasions, and that "[d]uring every site visit to NET CONNECTION and WEB ACCESS I observed that the vast majority, if not every customer, was playing sweepstakes games on computer stations. Upon information and belief, other Code Enforcement staff have made similar observations

when on premises at NET CONNECTION and WEB ACCESS." Henninger Decl. ¶¶ 18-19. Sergeant Scheuller states,

> On the occasions I have been on the premises at WEB ACCESS, I observed that the vast majority, if not every customer, was playing sweepstakes games on computer stations. On February 14, 2013, during a Detail with Code Enforcement, I observed twenty-eight accessible computer stations inside WEB ACCESS. Of those twenty-eight terminals, three patrons were actively using the terminals and each of those customers was participating in sweepstakes games. On January 11, 2013, during a Detail with Code Enforcement, I observed twenty-eight accessible computer stations inside WEB ACCESS. Of those twenty-eight terminals, one patron was actively using the terminals and each of those customers was participating in sweepstakes games. During my visits, I did not observe any customers making copies or sending faxes, or using the computers for any purpose other than playing sweepstakes games. Upon information and belief, other Sheriff's Department employees have made similar observations when on premises at WEB ACCESS.

Scheuller Decl. ¶ 14. With regard to Net Connection, Sergeant Scheuller states,

> On the occasions I have been on the premises at NET CONNECTION, I observed that the vast majority, if not every customer, was playing sweepstakes games on computer stations. On March 27, 2013, during a Detail with Code Enforcement, I observed forty accessible computer stations inside NET CONNECTION. Of those forty terminals, eleven patrons were actively using the terminals and each of those customers was participating in sweepstakes games. On February 14, 2013, during a Detail with Code Enforcement, I observed forty accessible computer stations inside NET CONNECTION. Of those forty terminals, ten patrons were actively using the terminals and each of those customers was participating in sweepstakes games. On January 11, 2013, during a Detail with Code Enforcement, I observed forty accessible computer stations inside NET CONNECTION. Of those forty terminals, nine patrons were actively using the terminals and each of those customers was participating in sweepstakes games. During my visits, I did not observe anyone using the computers for any purpose other than playing sweepstakes games nor did I observe any customers making copies or sending faxes. Upon information and belief, other Sheriff's Department employees have made similar observations when on premises at NET CONNECTION.

*Id.* ¶ 20. Henninger states that "based on the site visits, Code Enforcement determined that these were a new type of business that had not previously operated in the County. This type of business was a use where the primary activity is providing access to computer software involving gaming/recreation activities where cash prizes are awarded, which the County began to refer to as 'Sweepstakes Centers.'" *Id.* ¶ 5. The Alameda County Zoning Ordinance does not list "Sweepstakes Centers" as a permitted use.

Based on the determination that plaintiffs were operating unauthorized Sweepstakes Centers, Code Enforcement staff initiated administrative enforcement proceedings against plaintiffs, as well as against all known Sweepstakes Centers operating in the unincorporated area of Alameda County, such as non-parties Rapid Business Solutions and Diamond Internet Services. A series of administrative

proceedings and public hearings followed. On February 13, 2013, the West County Board of Zoning Adjustments ("WBZA") held a public hearing and, after receiving testimony, declared that Web Access and Net Connection were public nuisances because they were continuing to operate in violation of the Alameda County Zoning Ordinance. Plaintiffs' Request for Judicial Notice, Ex. B & C.[1] Plaintiffs appealed the WBZA's February 13, 2013 decision to the Alameda County Board of Supervisors.

On March 26, 2013, the County Board of Supervisors held a hearing on plaintiffs' appeals. At the hearing, Planning Staff stated that based upon their investigation, they had determined that plaintiffs' businesses were "Sweepstakes Centers" and that those uses were not permitted in any zoning district within the unincorporated areas of the County. Based upon the Planning Staff recommendations, the Board of Supervisors denied plaintiffs' appeals. Griffin Decl. Ex. M. The final abatement orders issued, on March 27, 2013, prohibit Net Connection and Web Access from engaging in "any and all sweepstakes use immediately." Plaintiffs seek a temporary restraining order to enjoin enforcement of the abatement orders. Defendants seek to dismiss plaintiffs' complaint.

## DISCUSSION

### I. Defendant's motion to dismiss

Defendant moves to dismiss the complaint for failure to state a claim. Defendant contends that the complaint does not identify expressive conduct protected by the First Amendment, and that even if plaintiffs have engaged in protected speech, the application of the zoning ordinances did not impermissibly restrict that speech. Defendant contends that the complaint fails to allege a procedural due process claim because plaintiffs had the opportunity to be heard and plaintiffs have not identified a protected property interest. With regard to substantive due process, defendant contends that the complaint does not plausibly allege conduct that shocks the conscience. Defendant challenges the equal protection claim on the grounds that plaintiffs have not sufficiently alleged that they were treated differently than similarly-situated businesses, and in any event, defendant's enforcement of zoning

---

[1] The Court may take judicial notice of matters of public record outside the pleadings. *See MGIC Indemn. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.1986). The exhibits attached to the parties' requests for judicial notice are matters of public record, and therefore, the Court takes judicial notice of them.

4

1 ordinances was not irrational. Finally, defendant argues that plaintiffs are estopped from challenging
2 the abatement orders as applied because they did not petition for a writ of administrative mandamus
3 pursuant to California Code of Civil Procedure section 1094.5.

4 The Court concludes that the complaint sufficiently alleges the elements of each claim, and that
5 defendant's arguments largely raise factual issues that are beyond the scope of the pleadings. The Court
6 also finds that plaintiffs are not estopped from challenging the abatement orders. Defendant has not
7 shown that the proceedings before the Board of Supervisors which resulted in the abatement orders were
8 "conducted with sufficient safeguards to be equated with a state court judgment." *Miller v. County of
9 Santa Cruz*, 39 F.3 1030, 1032 (9th Cir. 1994); *see also Guru Nanak Sikh Society of Yuba City v. County
10 of Sutter*, 326 F. Supp.2d 1128, 1134 (E.D.Cal. 2003) (holding § 1983 challenge to Board of
11 Supervisors' denial of application for conditional use permit and zoning regulations on which denial was
12 premised was not barred by the plaintiff's failure to seek administrative mandamus because, *inter alia*,
13 "it is hardly clear that the application review process before the Sutter County Board of Supervisors,
14 which is essentially a legislative body, would be enough like a judicial process to make claim preclusion
15 appropriate.").

17 **II.      Plaintiffs' motion for a temporary restraining order**
18 "The standard for issuance of a temporary restraining order is the same as that for issuance of
19 a preliminary injunction." *Burgess v. Forbes*, No. C 09-629 JF (HRL), 2009 WL 416843, at *2 (N.D.
20 Cal. Feb. 19, 2009). In order to obtain a preliminary injunction, a plaintiff "must establish that he is
21 likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary
22 relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."
23 *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008) (citations omitted).

25          **A.      Equal Protection**
26 The Equal Protection clause protects individuals constituting a "class of one" if the plaintiff
27 demonstrates that there has been irrational and intentional differential treatment. *See Town of
28 Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). A "class of one" claim requires a showing that the

5

government "(1) intentionally (2) treated [plaintiffs] differently than other similarly situated [businesses], (3) without a rational basis." *Gerhart v. Lake County, Montana*, 637 F.3d 1013, 1022 (9th Cir. 2011) (citing *Olech*, 528 U.S. at 564). Plaintiffs contend that they are similarly situated to other businesses in the County that promote their businesses through sweepstakes games, such as McDonald's, FedEx, Walmart and CVS Pharmacy. Plaintiffs argue that they alone were targeted as an unpermitted use, and that there is no rational basis for treating their businesses differently.

The Court concludes that plaintiffs have not demonstrated a likelihood of success on their Equal Protection claim because, *inter alia*, they have not shown that they were treated differently than similarly situated businesses. The evidence submitted by plaintiffs shows that the other businesses' sweepstakes are offered for limited time periods, and there is no evidence that the other sweepstakes are a core use of those businesses. In contrast, plaintiffs' sweepstakes are not limited to a particular time period, and the record before the Court shows that the majority of customers' time spent on the computers is dedicated to sweepstakes gaming. *See* Henninger Decl. ¶ 19; Scheuller Decl. ¶¶ 14, 20.[2] Further, although plaintiffs emphasize the fact that in certain sweepstakes promotions, such as those run by McDonald's, Coca-Cola, and Carl's Jr., participants use computers or other electronics devices to submit their sweepstakes entries and to reveal the results of such entries, in those sweepstakes, customers are using their own computers or electronics devices, not those of the businesses. *See* Griffin Decl. Ex. C, D, J. Plaintiffs' equal protection claim is also undercut by the fact that businesses that are similarly situated to Net Connection and Web Access – Rapid Business Solutions and Diamond Internet Services – were subject to the same abatement orders that plaintiffs received, and for the same reason: all of these establishments permitted customers to play sweepstakes on the computers in their businesses, and Code Enforcement staff determined that playing sweepstakes was the core use at the business.

---

[2] Although the Doyle and Caviglia declarations both state that "many" customers use the computers for word processing, social networking, renting movies, and to search the Internet, plaintiffs have not submitted any quantitative evidence regarding the non-sweepstakes use of the computers. At the April 17, 2013 hearing, in response to a question from the Court, plaintiffs' counsel stated that over 50% of the time spent on computers at the two locations was spent on sweepstakes gaming.

6

**B. Due process**

**1. Procedural due process**

Plaintiffs frame their due process claim as follows: "the question is whether County could deprive Plaintiffs of their right to continue to operate their lawful businesses without first obtaining a judicial determination that Plaintiffs' businesses were somehow unlawful." Reply at 8-9. Plaintiffs argue that "[t]he process utilized by the County here – invention of a new zoning use and retroactive application of that use to stop Plaintiffs from offering lawful sweepstakes promotions – is no different from the retroactive application of a new zoning ordinance to shut down a preexisting use." *Id*. at 9. Plaintiffs rely on cases for the proposition that "[a] zoning ordinance which requires the discontinuance forthwith of a nonconforming use existing when the ordinance was adopted is a deprivation of property without due process of law unless the use is a public nuisance." *McCaslin v. City of Monterey Park*, 163 Cal. App. 2d 339, 329 P.2d 522 (1958) (affirming judgment in favor of plaintiff permanently enjoining city from enforcing the provisions of two zoning ordinances expressly designed to compel the discontinuance of the use of plaintiff's property as a decomposed granite quarry); *see also Santa Barbara Patients' Collective Health Co-op. v. City of Santa Barbara*, ___F. Supp. 2d ___, Case No. CV 10–06534 DDP (Rcx), 2012 WL 5964353, at *(C.D. Cal. Nov. 29, 2012) (holding medical marijuana dispensary stated a due process claim where dispensary obtained valid permit to build dispensary at specific location, then city adopted new zoning ordinance changing permissible locations for dispensaries, forcing dispensary to close its business and lose permit).

The Court finds that the cases cited by plaintiffs are distinguishable because plaintiffs have not shown that they have a vested property right to operate sweepstakes centers. The California Supreme Court has explained that "[t]he doctrine of vested rights . . . states that a property owner who, in good faith reliance on a government permit, has performed substantial work and incurred substantial liabilities has a vested right to . . . use the premises *as the permit allows*." *Communities for a Better Env't v. South Coast Air Quality Dist*., 48 Cal.4th 310, 323 (Cal.2010) (emphasis added). Here, plaintiffs obtained business licenses to operate retail establishments and subsequently the County discovered that the actual use at Net Connection and Web Access was sweepstakes gaming – an undisclosed, unpermitted use under the County Zoning Ordinance. The abatement orders do not prevent plaintiffs from operating

7

1 their businesses as retail establishments; they only prevent plaintiffs from allowing customers to play
2 sweepstakes on the computers in their businesses.

### 2. Substantive due process

Plaintiffs contend that the County's Zoning Ordinance is unconstitutionally vague as applied and thus violates their substantive due process rights. Plaintiffs argue that there is nothing in the Zoning Ordinance generally or in the Ordinance's definitions of "use" and "accessory use," that would provide plaintiffs with notice that their sweepstakes promotions are not allowed. Plaintiffs assert that "[i]t is undisputed that Plaintiffs sell computer rental time, copying and fax services, mailboxes for rent, and products such as snacks, including chips, candy, coffee, and soda," and that these are all retail uses. Reply at 9:25-27. Plaintiffs assert that the Zoning Ordinance is unconstitutionally vague because it does not provide notice of when a business can use a lawful sweepstakes promotion as opposed to an unpermitted "sweepstakes center."

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732, (2000). In reviewing a statute's language for vagueness, "we are relegated . . . to the words of the ordinance itself, to the interpretations the court below has given to analogous statutes, and perhaps to some degree, to the interpretation of the statute given by those charged with enforcing it." *Grayned*, 408 U.S. at 110 (internal quotation marks and footnotes omitted).

The County Zoning Ordinance defines "use" to mean "the purpose for which land or premises or a building is designed, arranged or intended, or for which it is or may be occupied or maintained let or leased." County Zoning Ordinance § 17.04.010. Plaintiffs' Request for Judicial Notice, Ex. E. The Zoning Ordinance defines "accessory use" to mean "a use which is appropriate, subordinate, incidental and customarily or necessarily related to a lawfully existing principal use on the same lot or building site and does not alter the essential characteristics of such principal use as a whole and as related to other

8

1  uses permitted in the same district." *Id*. The Zoning Ordinance lists a "retail store" as a permitted use.
2  County Zoning Ordinance § 17.38.010. Plaintiffs' Request for Judicial Notice, Ex. F.

3  The Court finds that on the current record, plaintiffs have not demonstrated that the Zoning Ordinance is unconstitutionally vague as applied. The County determined after an investigation of Net Connection and Web Access that the actual "use" of these businesses was not the disclosed and permitted retail use, but a new use not previously seen in the County, that of "Sweepstakes Centers." The administrative record shows that the Code Enforcement staff arrived at this determination based on numerous visits to Net Connection and Web Access during which Code Enforcement staff and Sheriff's Department staff observed the vast majority, if not all, customers playing sweepstakes games on the computers, and did not observe any customers using computers for non-sweepstakes purposes nor did they observe customers using fax and copy services or other retail services. Plaintiffs do not dispute that over 50% of the time spent on computers at the two locations is spent on sweepstakes gaming. The Court finds that a person of ordinary intelligence would understand that sweepstakes gaming is not a permitted "retail" "use" or "accessory use" under the Zoning Ordinance, and would also understand that sweepstakes gaming conducted in this manner and of this magnitude is different from sweepstakes promotions offered by businesses such as McDonald's and Carl's Jr.

Plaintiffs make much of the fact that the Zoning Ordinance does not define "Sweepstakes Center."[3] However, "the absence of an official definition does not necessarily mean the phrase is vague." *City of Los Altos v. Barnes*, 3 Cal. App. 4th 1193, 1203 (1992) (rejecting vagueness challenge to home occupation zoning ordinance that did not define "occupation carried on at home" and contained phrase "provided no assistants are employed" because "reference to commonly accepted usage" established what terms meant and persons of reasonable intelligence would not have difficulty understanding terms). Moreover, "a substantial amount of vagueness is permitted in California zoning ordinances." *Novi v. City of Pacifica*, 169 Cal. App. 3d 678, 682 (1985) (holding that land use ordinances which precluded uses that were detrimental to the "general welfare" and precluded

---

[3] Neither party cites any cases addressing facts similar to those present here, namely where a city or county has discovered that a business is engaging in a new use that is not explicitly mentioned or defined in the zoning code, and seeks to abate that use. The parties should address any such authority in future motion practice, including in the briefing on plaintiffs' motion for a preliminary injunction.

9

developments that were "monotonous" in design and external appearance were not unconstitutionally vague); *see also Ross v. City of Rolling Hills Estates*, 192 Cal. App. 3d 370, 374–376 (1987) (rejecting vagueness challenge to zoning view ordinance containing words "needless," "discourage," "view," "impairment" and "significantly obstructed"); *Briggs v. City of Rolling Hills Estates*, 40 Cal. App. 4th 637, 643 (1995) (holding ordinance that requiring a design to "respect the existing privacy of surrounding properties" is not unconstitutionally vague).

Plaintiffs also contend that the County's actions were arbitrary, unreasonable and failed to serve any legitimate governmental objective. "[T]he 'irreducible minimum' of a substantive due process claim challenging land use action is failure to advance any legitimate governmental purpose." *Shanks v. Dressel*, 540 F.3d 1082, 1088 (9th Cir. 2008). The Court finds that plaintiffs have not shown that the County's actions are not rationally related to a legitimate governmental purpose. The record shows that Code Enforcement staff and the Sheriff's Department conducted an investigation of plaintiffs' businesses after receiving numerous complaints from individuals and neighboring businesses about, *inter alia*, the true nature of the business conducted at Net Connection and Web Access. Code Enforcement staff determined that the businesses were operating as Sweepstakes Centers, and that this use was not permitted under the Zoning Ordinance. The Ninth Circuit has held that the government's action "must be upheld" if "the rational relation of the zoning actions to legitimate governmental interests is at least fairly debatable . . . ." *Nelson v. City of Selma*, 881 F.2d 836, 839 (9th Cir.1989) ("The preservation of the character and integrity of single-family neighborhoods, prevention of undue concentration of population, prevention of traffic congestion and maintenance of property values are all legitimate purposes of planning and zoning. The opposition of neighbors to a development project is also a legitimate factor in legislative decisionmaking.") (citation omitted). Here, the abatement orders are rationally related to the legitimate government purposes of maintaining the integrity of a zoning system.

### C. Free speech

Plaintiffs contend that the "use of a lawful sweepstakes promotion to advertise their businesses, attract customers and bolster sales of their products and services falls within their right to commercial

10

speech." Motion at 15:23-25. To evaluate this claim, the Court must first determine whether the activity at issue is "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments." *Spence v. State of Washington*, 418 U.S. 405, 409 (1974). Commercial speech is "defined as speech that does no more than propose a commercial transaction." *United States v. United Foods, Inc*., 533 U.S. 405, 409 (2001); *see also Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 473–74 (1989) (stating that the proposal of a commercial transaction test is "the test for identifying commercial speech"). "Where the facts present a close question, 'strong support' that the speech should be characterized as commercial speech is found where the speech is an advertisement, the speech refers to a particular product, and the speaker has an economic motivation." *Hunt v. City of Los Angeles*, 638 F.3d 703, 715 (9th Cir. 2011) (citing *Bolger v. Youngs Drug Prods. Corp*., 463 U.S. 60, 66–67 (1983)).

Plaintiffs cite *Discount Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509 (6th Cir. 2012), for the proposition that "use of a lawful sweepstakes promotion" constitutes commercial speech. In *Discount Tobacco City*, tobacco companies challenged the Family Smoking Prevention and Tobacco Control Act on free speech and other grounds. The Sixth Circuit held that the Act's "bar on the distribution of free samples of tobacco products in most locations, brand-name tobacco sponsorship of any athletic or social event, branded merchandising of any non-tobacco product, and distribution of free items in consideration of a tobacco purchase (i.e., 'continuity programs')" implicated the companies' commercial speech because they "are promotional methods that convey the twin messages of reinforcing brand loyalty and encouraging switching from competitors' brands." *Id*. at 520, 538.

Plaintiffs also rely on *Bailey v. Morales*, 190 F.3d 320 (5th Cir. 1999). In *Bailey*, chiropractors challenged a statute "which prohibits chiropractors and other professionals from soliciting employment, in person or over the telephone, from individuals who have a special need for chiropractic services arising out of a particular occurrence (e.g., an accident) or a pre-existing condition (e.g., having arthritis)" and "prohibits solicitation via 'runners' or telemarketing and by distributing promotional gifts and items." *Id*. at 321. The Fifth Circuit stated, "when deciding whether particular conduct or actions constitute speech, 'we ask whether an intent to convey a particularized message was present and whether the likelihood was great that the message would be understood by those who viewed it.'" *Id*. at 325

1 (citation omitted). The court held that "offering to give money or anything of value to obtain
2 employment in a professional capacity constitutes commercial speech. Chiropractors engage in such
3 conduct with an intent to convey a particularized message: hire me, try my service. Moreover, those
4 who receive the money or anything of value are likely to understand the message because rebates, free
5 samples and risk-free trials of products are common marketing tools." *Id*.

6 Based upon the record before the Court, the Court finds that plaintiffs have not demonstrated
7 that the abatement orders regulate speech, as opposed to conduct. The abatement orders direct plaintiffs
8 to "cease and desist any and all sweepstakes center use." Plaintiffs can continue to advertise their
9 businesses and the sweepstakes, and plaintiffs can continue to give customers sweepstakes entries. At
10 the hearing, plaintiffs' counsel stated that customers can continue to play the sweepstakes games by
11 learning the results from the cashier. Thus, all that is prohibited by the abatement orders is allowing
12 customers to play sweepstakes games on computers at Net Connection and Web Access. Plaintiffs have
13 failed to show how the activity of playing sweepstakes games constitutes commercial speech protected
14 by the First Amendment. Plaintiffs have not provided any information about the content of the games,
15 and thus there is nothing in the record to show that the games themselves are advertising plaintiffs'
16 businesses or imbued with some expressive content. In contrast, in *Discount Tobacco* and *Bailey*, the
17 tobacco companies and chiropractors were prohibited from engaging in certain types of advertising
18 (sponsorship of events, branded merchandise of non-tobacco products, and continuity programs in
19 *Discount Tobacco*; advertising chiropractor services in *Bailey*), and the advertising was tied to a brand
20 name, product or service with the intent to convey a particularized message.

21 The Court also notes that while plaintiffs have not cited any authority for the proposition that
22 the activity of playing sweepstakes games constitutes commercial speech, numerous courts in cases with
23 analogous facts have held that sweepstakes games are conduct, not speech. *See generally Telesweeps*
24 *of Butler Valley, Inc. v. Kelly*, No. 3:12–CV–1374, 2012 WL 4839010, at *6 (M.D. Pa. Oct. 10, 2012)
25 ("[T]he sweepstakes games themselves and the words used within the games do not constitute protected
26 speech. Unlike in [*Brown v. Entm't Merchants Ass'n*. ––– U.S. ––––, 131 S. Ct. 2729, 2733 (2011)
27 (holding that because "video games communicate ideas—and even social messages—through many
28 familiar literary devices (such as characters, dialogue, plot, and music) and through features distinctive

12

to the medium . . . . [t][hat suffices to confer First Amendment protection.")], the simulated gambling programs at issue here do not contain plots, storylines, character development, or any elements that would communicate ideas. Rather, the words associated with the display merely state whether a player has won a prize by displaying a depiction of, for instance, three cherries."); *see also There to Care, Inc. v. Comm'r of Indiana Dep't of Revenue*, 19 F.3d 1165, 1167-68 (7th Cir. 1994) (holding the activity of playing bingo is not speech because although "[a] voice at the front of the hall drones 'B–2" and 'G–49'; [and] someone at the back of the hall shouts 'BINGO!' and gets a prize[,] [t]hese words do not convey ideas; any other combination of letters and numbers would serve the purpose equally well. They employ vocal cords but are no more 'expression' than are such statements as '21' in a game of blackjack or 'three peaches!' by someone who has just pulled the handle of a one-armed bandit."); *Allied Veterans of World Inc., Affiliate 67 v. Seminole County*, 783 F. Supp. 2d 1197, 1202 (M.D. Fla. 2011), (holding that simulated gambling is not protected speech "because . . . the interaction and communication involved in these types of simplistic games is singularly in furtherance of the game; it is totally divorced from a purpose of expressing ideas, impressions, feelings, or information unrelated to the game itself."); *Serpico v. Village of Elmwood Park*, 344 Ill. App. 3d 203, 279 Ill.Dec. 158, 799 N.E.2d 961, 968 (Ill. App. Ct. 2003) (affirming district court's finding that an ordinance banning simulated video gaming devices did not implicate First Amendment protections, and the ordinance was rationally related to a legitimate governmental interest in regulating illegal gambling) (internal citations and quotation marks omitted).

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendant's motion to dismiss and DENIES plaintiffs' motion for a temporary restraining order. Docket Nos. 4 & 25. The Court will reexamine whether plaintiffs are entitled to injunctive relief on a fuller factual record.

**IT IS SO ORDERED.**

Dated: June 24, 2013

SUSAN ILLSTON
United States District Judge